Filed 1/11/23  P. v. Padilla CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANK ERNEST PADILLA,<br><br>Defendant and Appellant. | F083552<br><br>(Super. Ct. No. F19908620)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Frank Ernest Padilla contends on appeal that his sentence on count 2 or 3, or alternatively, two of his sentences on counts 1 through 3, should be stayed pursuant to Penal Code section 654.[1]

We also ordered the parties to submit supplemental briefing regarding the impact of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), which modified Penal Code section 1170, subdivision (b), to require imposition of the middle term of imprisonment unless circumstances in aggravation justify imposition of a greater sentence. (Stats. 2021, ch. 731, § 1.3.) It further modified section 1170, subdivision (b), to require that the circumstances in aggravation be found true beyond a reasonable doubt by a jury or a court in a bench trial or be stipulated to by the defendant. (*Ibid*.) Defendant contends the sentence on count 1 must be vacated and the case remanded for resentencing in light of Senate Bill 567's amendments to section 1170, subdivision (b).

We vacate the sentence and remand for resentencing in light of Senate Bill 567. We affirm the judgment in all other respects.

## PROCEDURAL SUMMARY

On July 14, 2021, the Fresno County District Attorney filed an information charging defendant with one count of inflicting corporal injury to someone in a dating relationship with prior convictions (§ 273.5, subd. (f)(1); count 1); one count of making criminal threats (§ 422; count 2); and one count of false imprisonment by violence (§ 236; count 3).

Defendant waived formal arraignment and pled not guilty to the charges.

On September 22, 2021, a jury found defendant guilty on all counts.

On November 16, 2021, the trial court sentenced defendant to six years four months in prison as follows: on count 1, five years (the upper term); on count 2,

---

[1]     All statutory references are to the Penal Code.

eight months (one-third of the midterm, consecutive); and on count 3, eight months (one-third the midterm, consecutive).

On November 16, 2021, defendant filed a notice of appeal.

## FACTS

The parties stipulated that on October 8, 2010, defendant was convicted of inflicting corporal injury on someone with whom he was in a dating relationship (§ 273.5, subd. (a)), and on November 7, 2014, he was convicted of inflicting corporal injury with priors (§ 273.5, subd. (f)(1)).

Defendant and C.S. had an on-again, off-again dating relationship, and had one child together. By October 22, 2019, C.S. had a restraining order against defendant and defendant also had another girlfriend, but C.S. allowed defendant to live with her.

On October 22, 2019, defendant was at C.S.'s apartment. That morning, they began arguing "[be]cause [C.S.] didn't want him to be there and he didn't want to leave." She testified that their argument started "[b]ecause he had [her] debit cards and [she] told him that [she] wanted them back and he didn't want to give them back to [her], so [she] cancelled all [her] debit cards and [she] cancelled [her] direct deposit … and he was mad." She cancelled them to prevent defendant from being able to use them because she worked full-time at a minimum wage job, but defendant did not have a job and had been using her debit cards to purchase things for himself. At that point, it was a verbal argument in which both C.S. and defendant raised their voices. However, when she tried to leave, he would not let her. She stated that he stopped her by "[j]ust blocking [her], standing in front of [her], or … telling [her] he will hit [her] if [she] walked out or anything, or if [she] made a move," including blocking the front door so that she could not exit the apartment.

C.S. then testified that after she went to her bedroom, defendant began hitting her, "because [she] wouldn't be quiet and [she] wanted to get out of the room. So if [she] tried to yell or leave or anything he would push [her] back on the bed." When C.S. yelled

3.

or screamed at defendant, and refused to be quiet, defendant held a pillow over her face so that she could not breathe, telling her to be quiet. When he released the pillow, she would scream again, so he would again put the pillow over her face. He forcefully put the pillow over her face "at least more than six times," for 30 to 40 seconds each time, during which she was unable to breathe. He stopped when C.S. agreed not to be loud anymore.

She testified that they stayed in the room "for awhile arguing for a long time and it just got physical then because again he didn't like what [she] had to say and didn't want to hear [her] and just wanted [her] to be quiet, and so he started hitting [her]." He then dragged her off the bed onto the floor, standing over her while she was on her knees, hitting her in the head with his closed fist about three times. He then grabbed her and hit her head against the wall "because [she] didn't be quiet." While hitting her as she was on the ground, he was telling her to be quiet and was calling her derogatory names. He then threw pill bottles containing C.S.'s diabetes medication at her so hard that they burst open. He said he did not care if she did not take them and died.

The argument moved to the children's bedroom and calmed down for a short time. However, when defendant lit a cigarette and C.S. told him not to smoke in the children's room, defendant forced C.S. to sit on the floor on her knees while he smoked a cigarette and blunt and tried to watch television. When C.S. asked him if she could get up to use the bathroom, defendant replied not until he was ready.

When defendant went to "ash" his cigarette, C.S. ran for the door and screamed, " ' Somebody call the cops[.]' " However, she did not make it out the door before defendant caught her by the hair, dragged her back inside, and slammed the door. C.S. stumbled back and landed on the floor on her knees. Defendant told her to "shut the f**k up," that no one was going to call the cops, and that she was a "stupid b***h." He then began hitting her in the back and kicking her in the buttocks. By this time, it was dark outside.

4.

Defendant then dragged C.S. to the bedroom by her hair. The argument continued there, as he yelled at her "about trying to run out and telling [her] to be quiet." She tried to calm him, but he "was mad" and wanted to hog-tie her. She told him that if he instead tied her in front, she would be quiet and sit. He tied her hands behind her back with an extension cord, and ran the end of the cord under her buttocks to tie her feet together, with her legs pulled up to her chest, so that she could sit with her back against the wall next to the bed, rather than lie on her stomach on the floor. He told C.S. he was tired from dealing with all of C.S.'s "s**t" all day, and he wanted to go to sleep." Defendant threatened to put a sock in C.S.'s mouth, but she agreed to be quiet. C.S. continued arguing with defendant about not wanting to be tied up. She told him she would not leave and would lay next to him if he untied her. Defendant got a purple stun gun that had been given to C.S. by her mother and began "tasing" C.S.'s chest and shoulder with it, which was painful. While he did so, he called her derogatory names, as C.S. kept asking him to untie her.

C.S. testified that defendant told her that if the police did come because of C.S.'s yelling and trying to run out, he was going to "make it worth it." C.S. testified that "make it worth it" meant he would "beat [her] a**'" if the police came. Defendant had made similar threats to C.S. in the past. C.S. stopped yelling.

At some point in the night, defendant fell asleep. C.S. worked herself loose from the extension cord. When she felt that defendant was really asleep and would not wake up, she ran from the apartment to a nearby corner store. When she was running outside the apartment, she heard defendant yell after her, " 'You f*****g b***h!' "

C.S. borrowed the phone of someone outside the corner store and called 911 and a Fresno police officer arrived in response to her call.

5.

## DISCUSSION

**I.     Section 654**

Defendant contends his sentence on either count 2 (criminal threats; § 422) or count 3 (false imprisonment by violence; § 236) should be stayed pursuant to section 654, because he had the same objective for both counts 2 and 3.  Alternatively, defendant contends that two of his sentences on count 1 (inflicting corporal injury to someone in a dating relationship with prior convictions; § 273.5, subd. (f)(1)), count 2 (criminal threats; § 422) or count 3 (false imprisonment by violence; § 236) should be stayed pursuant to section 654, because he had the same objective for all three counts.  We disagree.

### A.     *Law*

Section 654 provides:

> "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."  (§ 654, subd. (a).)[2]

Section 654 limits punishment for multiple offenses where the "act or omission" or course of conduct is indivisible in time and pursued according to a single objective or intent.  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several

_____

[2]     At the time of sentencing, former section 654 required that an act or omission that was punishable in different ways by different laws had to be punished under the law that provided for the longest possible term of imprisonment.  (Former § 654, subd. (a).)  Operative July 1, 2021, Assembly Bill No. 518 (Reg. Sess. 2021−2022) amended section 654, removing that requirement and granting the trial court discretion to impose punishment under any of the applicable provisions.

acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).)  Under the first step, we consider if the crimes were completed by a " 'single physical act,' " or by "a course of conduct." (*Ibid.*)  It is sufficient for this first step of the inquiry that the circumstances "involve, or arguably involve" multiple acts.  (*People v. Mesa* (2012) 54 Cal.4th 191, 199.)  "[I]f we conclude that the case involves more than a single act—i.e., a course of conduct[,]" we then proceed to the second step and "consider whether that course of conduct reflects a single ' "intent and objective" ' " or is divisible according to "multiple intents and objectives." (*Corpening*, at p. 311.)  Whether a course of conduct gives rise to more than one act for purposes of section 654 "depends on the *intent and objective* of the actor." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 94.)  If all the offenses were incident to one objective, the defendant may not be punished for more than one offense.  (*Ibid.*)  " 'Where a defendant entertains multiple criminal objectives independent of and not merely incidental to each other, he may be punished for more than one crime even though the violations share common acts or are parts of an otherwise indivisible course of conduct.' " (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 425−426.)  Even where a course of conduct is " 'directed to one objective,' " however, "it may 'give rise to multiple violations and punishment' if it is 'divisible in time.' " (*Id.* at p. 424; see also *People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)  Such temporal separation " ' "afford[s] the defendant opportunity to reflect and renew his or her intent before committing the next [offense], thereby aggravating the violation of public security or policy already undertaken." ' " (*Jimenez*, at p. 424.)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*In re Raymundo M.*, *supra*, 52 Cal.App.5th at p. 94.)

Substantial evidence is evidence that is reasonable, credible, and of solid value. (*People v. Armstrong* (2016) 1 Cal.5th 432, 450.)  We review the court's determination

"in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

When the facts of the case are undisputed, the application of section 654 raises a question of law, which is reviewed de novo. (*Corpening*, *supra*, 2 Cal.5th at p. 312.)

### B.  Analysis

As the facts of the case here are undisputed, we review the application of section 654 de novo. (*Corpening*, *supra*, 2 Cal.5th at p. 312.) As defendant contends, his case was not final on January 1, 2022, and the trial court did not make any express findings as to section 654 for defendant's convictions on counts 1 through 3 and imposed consecutive sentences for those convictions. We review the record to determine if there is substantial evidence to support the trial court's implied finding that defendant harbored multiple criminal objectives when he hit C.S. multiple times, held a pillow over her face, and hit her head against the wall (count 1), threatened her (count 2) and tied her up with the extension cord (count 3). We conclude the evidence here was sufficient. The trial court's imposition of consecutive sentences on counts 1 through 3 was proper under section 654. (*People v. Beamon*, *supra*, 8 Cal.3d at p. 639.)

Defendant contends that his primary objective in counts 1 through 3 was to keep C.S. in the apartment so that he could continue assaulting her, or alternatively in counts 2 and 3 was to deter C.S. from getting free and reporting defendant's assault on her to law enforcement. However, there is sufficient evidence to support a contrary finding that he harbored different objectives during the commission of each count. The People are correct that defendant committed multiple acts of violence with ample time to reflect on his actions, as he began the argument with C.S. in the morning and the entire ordeal did not end until close to midnight when she escaped the apartment and called 911. Defendant's initial attack on C.S., including hitting her, holding a pillow over her face, and hitting her head against the wall, and his subsequent conduct including tying her up

with an extension cord and then threatening her, "were volitional and calculated, and were separated by periods of time during which reflection was possible." (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [§ 654 did not bar punishment for two shots occurring within one minute of each other; defendant had opportunity to reflect and consider his action before firing each shot].)

First, defendant hit C.S., held a pillow over her face, and hit her head against the wall because he wanted to stop C.S. from saying things he did not want to hear during their initial argument, resulting in the commission of inflicting corporal injury (count 1). As C.S. testified, defendant did this because he wanted to make her be quiet because he did not "like what [she] had to say" during their argument about cancelling her debit cards and direct deposit and him leaving her apartment.

Next, after a lull in the argument, when C.S. attempted to run out of the apartment's front door defendant dragged C.S. to another room and found an extension cord to hog-tie her wrists and ankles with the objective of preventing her from leaving the apartment, resulting in the commission of false imprisonment by violence (count 3). As she testified, after she yelled from the front door and tried to run out, defendant dragged her to the bedroom by her hair and yelled at her "about trying to run out."

After defendant hog-tied C.S., he told her that if the police came because she had yelled, he would "make it worth it," with the intent of making her afraid to alert the police, resulting in the commission of the criminal threat (count 2). According to C.S.'s testimony, defendant was not concerned about the police until after a lull in the initial argument when C.S. ran to the apartment door and yelled for someone to call them.

The temporal separation between defendant's acts supports the trial court's determination that these were separate offenses. Defendant had the opportunity to reflect and renew his intent after hitting C.S. and before he threatened her, and again before he tied her up with the extension cord. (See, e.g., *People v. Jimenez*, *supra*, 32 Cal.App.5th at p. 426; *People v. Gaio*, *supra*, 81 Cal.App.4th at p. 935 [temporal separation between

9.

offenses justified separate sentences under § 654]; *People v. Fuentes* (2022) 78 Cal.App.5th 670, 681 [defendant had time to reflect and consider his next action after he crashed vehicle and fled on foot].) The evidence was sufficient to support the court's implied finding that defendant had multiple objectives—he intended to stop her from saying things he did not want to hear during their initial argument, he tried to make her afraid of alerting the police, and he also tried to stop her from leaving the apartment. In sum, the evidence supports the trial court's implied finding that section 654 does not prohibit multiple punishments for counts 1 through 3.

Accordingly, we find that the trial court's imposition of consecutive sentences for counts 1 through 3 was proper.

## II. Senate Bill 567

Defendant contends the trial court's imposition of the upper term on count 1 should be vacated and the matter remanded in light of Senate Bill 567's amendments to section 1170, subdivision (b). The People agree, as do we.

### A. Background

On September 22, 2021, defendant was convicted in court 1 by a jury of inflicting corporal injury to someone in a dating relationship with prior convictions (§ 273.5, subd. (f)(1)).

The parties stipulated that on October 8, 2010, defendant was convicted of inflicting corporal injury to someone with whom he was in a dating relationship (§ 273.5, subd. (a)), and on November 7, 2014, he was convicted of inflicting corporal injury with priors (§ 273.5, subd. (f)(1)).

The probation report considered by the trial court during sentencing detailed defendant's prior record, including a felony conviction for corporal injury to a cohabitant; a number of violations of postrelease community supervision; a felony conviction for corporal injury to a cohabitant with priors; and misdemeanor violations of protective orders (§ 166, subd. (c)(1)). The probation report recommended the court find the

10.

following circumstances in aggravation: defendant was armed with or used a weapon at the time of the offense; defendant engaged in violent conduct indicating a serious danger to society; defendant's prior convictions or sustained juvenile convictions were numerous or of increasing seriousness; defendant served a prior prison term; defendant's prior performance on probation or parole was unsatisfactory; and defendant engaged in tying, binding, or confining the victim during commission of a serious felony. The probation report found no circumstances in mitigation. The report recommended that the trial court impose the upper term on count 1 and consecutive one-third midterm sentences on counts 2 and 3.

At sentencing, defendant asked for the mitigated term, based on a low risk assessment and "the theory that the injuries did not match [the victim's] story via testimony and photographs."

However, the prosecution argued that defendant had a "criminal history dating back to 2010 that solely involves charges of domestic violence" and that the victim "has now been the third, possibly fourth victim, of this Defendant." The prosecution noted that the jury found defendant guilty of all three charges, and stated, "[I]t's abundantly clear that the Defendant has no regard for women, specifically this victim." The prosecution noted that defendant slammed the victim's head against the wall, threw pill bottles at her, tied her up, and repeatedly tased her. The prosecution asked for the aggravated term and consecutive terms on counts 2 and 3.

When sentencing defendant, the trial court stated,

> "In regards to Count 1, the Court based on not only the circumstances of the acts here, but based on prior criminal history, significant criminal history, the Court selects the aggravated term of 5 years."

### B.     Law

On October 8, 2021, Senate Bill 567 was signed into law. It amends the determinate sentencing law, section 1170, subdivision (b), which delineates the trial

11.

court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper terms, by making the middle term the maximum sentence for a term of imprisonment, unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).) Effective January 1, 2022, under the newly amended law, the trial court may impose an upper term sentence only where there are circumstances in aggravation, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or court trial. (*Ibid.*) However, under section 1170, subdivision (b)(3), the trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Under the amended section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

### C.     *Analysis*

Senate Bill 567 went into effect on January 1, 2022. Absent evidence to the contrary, the Legislature intends amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the amendments operative date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 306−308 [discussing *In re Estrada* (1965) 63 Cal.2d 740]; *People v. Brown* (2012) 54 Cal.4th 314, 323.) The "consideration … of paramount importance" is whether the amendment lessens punishment. If so, the "inevitable inference [is] that the Legislature must have intended that the new statute" apply retroactively. (*Estrada*, at pp. 744−745.) As Senate Bill 567's amendments to section 1170, subdivision (b), lessens punishment, and there is no indication that the Legislature intended it to apply prospectively only, the new law must be retroactively applied. Therefore, the amendment to section 1170,

subdivision (b), applies to all cases not final on Senate Bill 567's effective date. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

As the parties agree, defendant's case was not final on January 1, 2022, and he was sentenced to the upper term on count 1 under the former section 1170. We agree. Defendant is entitled to the benefit of Senate Bill 567. Here, defendant's sentence to the upper term on count 1 is not consistent with the requirements of Senate Bill 567's amendment to section 1170, subdivision (b), because the record does not reflect that the aggravating circumstances that the trial court relied upon were all proven by certified records of defendant's prior convictions, admitted by defendant, or proved to a jury beyond a reasonable doubt.

Here, as to the aggravating circumstance of defendant's "prior criminal history, significant criminal history," defendant stipulated to two prior convictions relating to domestic violence: inflicting corporal injury on someone with whom he was in a dating relationship (§ 273.5, subd. (a)) and inflicting corporal injury with priors (§ 273.5, subd. (f)(1)). The probation report contained a record of defendant's other prior convictions. However, the probation report is not a certified record of conviction. Defendant contends that although defendant stipulated to two prior felony convictions, two is not "numerous" enough to qualify as an aggravating factor under California Rules of Court, rule 4.421(b)(2),[3] which states an aggravating circumstance supporting an upper term sentence is, "The defendant's prior convictions … are numerous or of increasing seriousness." (Rule 4.421(b)(2).) Defendant relies on *People v. Quiles* (2009) 177 Cal.App.4th 612, where the trial court found that although the defendant only had two prior convictions, the seriousness of his offenses had increased such that they qualified as an aggravating factor under rule 4.421(b)(2). Pursuant to *Quiles*, two convictions are not necessarily insufficient to support a trial court's determination

---

[3] All references to rules are to the California Rules of Court.

13.

that a defendant's criminal history is an aggravating circumstance supporting an upper term sentence, if the two prior convictions show increasing seriousness. Here, while defendant stipulated to two prior convictions for inflicting corporal injury on someone with whom he was in a dating relationship, the record does not show whether the offenses were of increasing seriousness. Respondent does not dispute this. However, the trial court also relied on defendant's additional prior convictions contained in the probation report. As these other prior convictions were not stipulated to by defendant, found true beyond a reasonable doubt by a jury, or proven by a certified record of conviction, they do not meet the requirements of section 1170, subdivision (b).

As to the other aggravating circumstance relied upon by the trial court, none of the facts underlying "the circumstances of the case," were admitted by defendant or presented to or found true by the jury. Nevertheless, the upper term was imposed on count 1. Defendant's sentence to the upper term on count 1 by the trial court is therefore not consistent with the requirements of Senate Bill 567's amendment to section 1170, subdivision (b).[4]

## DISPOSITION

We vacate the sentence and remand for resentencing in light of Senate Bill 567. In all other respects, the judgment is affirmed.

---

[4] The People do not argue that the error was harmless, and we do not consider the issue.

14.